LAW OFFICE OF THOMAS RUBERTONE JR.
*Attorney for the Defendants*
244 Waverly Avenue
Scarsdale, New York 10583
(646) 209-0301
trlaw@optonline.net

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
-------------------------------------------------------------------X
MICHAEL MANFREDI, JUAN PELAEZ and TOUFIK     Case No.09 CV 7040 (DLC)(HBP)
ZAROURI, Individually and On Behalf of all Others
Similarly Situated,                                                                                    **DEFENDANTS'**
                                                                                                                **RULE 56 (b) STATEMENT**

                            -against-

E & D, LLC d/b/a THE PRIME GRILL NY, JA
RESTAURANT MANAGEMENT, LLC d/b/a SOLO
and JOSEPH ALLAHAM.

                                  Defendants.
-------------------------------------------------------------------X

Pursuant to Rule 56 (b) of the Federal Rules of Civil Procedure defendants set forth the following material facts that defendants contend are uncontroverted and that support their motion for summary judgment dismissing the complaint:

**Defendant E & D LLC**

1. Steven Traube is the Manager of defendant E & D LLC doing business as The Prime Grill and Manager of JA Restaurant Management LLC doing business as Solo Restaurant (Traube Aff. at para. 1; Allaham Aff. at para. 4-5; Exhibit B).

2. E & D LLC is limited liability company which owns and operates a kosher restaurant called The Prime Grill at 60 East 49th Street, New York, NY 10017 (see LLC formation documents and Sales Tax Certificate annexed hereto as Exhibit A; Allaham Aff. at para. 1-3).

3. Traube is employed by E & D LLC to manage The Prime Grill (Traube Aff. at para. 3; Exhibit B).

1

4. Philip Menegis is employed by E & D LLC as controller for The Prime Grill (Traube Aff. at para. 4; Allaham Aff. At para. 4; Exhibit B).

5. The payroll for defendant E & D LLC is processed by ADP with information provided by Menegis and generated by time punch cards or hand scan data from the restaurant (Traube Aff. at para. 5).

6. As Manager and Controller, Traube and Menegis, respectively, are responsible for wages and hours policies of E & D LLC (Traube Aff. at para. 6).

7. Joseph Allaham holds the majority membership interest in E & D LLC, a limited liability company. He is a restaurateur who conceived the restaurant's concept and design. He is involved in marketing, public relations, promotions, as well as menus and presentation in conjunction with the chef. He is not involved in the day to day or administrative supervision of employees such as the plaintiffs and he neither makes, approves nor implements wages and hours policies for The Prime Grill. (Allaham Aff. at para.1-5; Traube Aff. at para. 7).

8. The three named plaintiffs are former employees who worked on the "floor" of The Prime Grill, i.e., waiters, busboys or runners. None of three named plaintiffs have worked at Solo Restaurant nor were they ever transferred between defendants' respective restaurants (Traube Aff. at para. 8).

9. The Prime Grill has its own Chef, who oversees the food preparation in the "back" of the restaurant, maintains the menu, the food inventory and supervises the kitchen employees (Traube Aff. at para. 9).

10. The Prime Grill restaurant originally had a Manager, Valerie Uslaski, from February 2003 until she left in October 2003 (Traube Affidavit at para. 10).

11. From the restaurant's opening, the Maitre D' has overseen the service provided by employees on the floor of the restaurant and handled customer relations concerning restaurant service (Traube Aff. at para. 11; Exhibit B).

12. Since Uslaski resigned as manager, Traube has handled the administrative supervision of the restaurant, including hiring and employee discipline decisions (Traube Aff. at para. 12).

13. At The Prime Grill, the waiters, busboys and runners report to work for the lunch shift at approximately 11:00 a.m. and the dinner shift at approximately 4:30 p.m. Prior to 2008, lunch shifts began at 10:30 a.m. and dinner shift began at 4:00 p.m. If employees are working the dinner shift, as well, they are required to punch or scan out after lunch and punch or can in again when they report for the dinner shift (Traube Aff. para. 13). All employees at the Prime Grill received meals and get a half hour meal break.

**Defendant JA Restaurant Management LLC**

14. JA Restaurant Management LLC, a limited liability company, owns and operates a kosher restaurant called Solo Restaurant from its offices located at 424 Madison Avenue, 16th Floor, New York, NY 10017. Solo Restaurant is located at 550 Madison Avenue, New York, New York (see LLC formation documents and Sales Tax Certificate annexed hereto as Exhibit A; Allaham Aff. at 6-8).

15. Traube is separately employed by defendant JA Restaurant Management LLC to manage Solo Restaurant (Traube Aff. at para. 15; Allaham Aff. at para. Exhibit B).

16. Menegis is separately employed by JA Restaurant Management LLC as controller for Solo Restaurant (Traube Aff. at para. 16; Allaham Aff. at para. 10; Exhibit B).

17. The payroll for defendant JA Restaurant Management is processed by ADP with information provided by Menegis and generated by time punch cards or hand scan data from the restaurant (Traube Aff. at para. 17).

18. As Manager and Controller, Traube and Menegis, respectively, are responsible for wages, hours and tip-sharing policies of JA Restaurant Management LLC (Traube Aff. at para. 18; Allaham Aff. at para. 6, 7, 11).

19. Joseph Allaham holds the majority membership interest in E & D LLC, a limited liability company (Allaham Aff. at para. 6; Traube Aff. at para. 19).

20. The three claimants who have opted-into the federal claims, to date, are former employees who worked on the "floor" of Solo Restaurant, i.e., waiters, busboys or runners. None of three named plaintiffs have worked at The Prime Grill nor were they ever transferred between defendants' respective restaurants (Traube Aff. at para. 20).

21. Solo Restaurant has its own Chef, who oversees the food preparation in the kitchen, maintains the menu, the food inventory and supervises kitchen employees (Traube Affidavit at para. 21).

22. Solo Restaurant originally had a Manager at the Restaurant, Deborah Foley, who worked from June 2004 until April 2005 (Traube Aff. at para. 22; Exhibit B).

23. From the opening of Solo Restaurant's, the Maitre D' has overseen the service provided by employees on the floor of the restaurant and handled customer relations concerning restaurant service. Traube Aff. at para. 23; Exhibit B).

24. Since Foley resigned as Manager, Traube has handled the administrative supervision of the restaurant, including hiring and employee discipline decisions (Traube Aff. at para. 24).

25. At Solo Restaurant, the waiters, busboys and runners report to work for the lunch shift at approximately 11:00 a.m. If employees work the lunch and dinner shifts on the same day they

are required to punch or scan out after lunch and report back for the dinner shift at approximately 4:30 p.m. (Traube Aff. at para. 25).

**Non-Compensable Breaks, Shift Spread and Maitre D's**

26. When an employee works both shifts and fails to punch out between lunch and dinner at either The Prime Grill or Solo Restaurant, it generates unearned overtime for a non-compensable break of between 1 ½ and 2 ½ hours. Since overtime is not a common occurrence, when this has happened undetected in the restaurant, it has gone through the payroll process and employees have been paid (Traube Aff. at para. 26).

27. The wages paid to the claimants for time reflected on the clock or scanner at The Prime Grill for non-compensable breaks occurring between the lunch and dinner shifts are properly credited to E & D LLC to satisfy the additional hour's pay required under the state law "shift spread" rule.

28. The wages paid to the claimants for time reflected on the clock or scanner at Solo Restaurant for non-compensable breaks occurring between the lunch and dinner shifts are properly credited to JA Restaurant Management LLC to satisfy the additional hour's pay required under the state law "shift spread" rule.

29. The Maitre D' at The Prime Grill has at all times relevant herein been Ines Kincaide (*see* 2009 W2s submitted herewith as Exhibit K). She shared in the tip pool on shifts that she worked.

30. The Maitre D' at Solo Restaurant has at all times relevant herein has been Tarik Ghaduoani (*see* 2009 W2s submitted herewith as Exhibit K). He shared in the tip pool on the shifts that he worked.

31. Kincaid has no ownership interest in E & D LLC or any other defendant.

32. Ghadouani has no ownership interest in JA Restaurant LLC or any other defendant.

33. The Maitre D' at each restaurant sets up the dining room prior to opening, greets and seats customers as they arrive, and assisted waiters and waitresses, as needed, in serving the customers. Maitre D's responsibilities sometimes include interviewing applicants for positions as waiters and waitresses, recommending that persons be hired, and reporting attendance or performance problems to management involving table service employees.

34. Maitre D' has no responsibility for setting the hours of the restaurant, methods of operation, pay of employees, prices, supervising the kitchen, or determining the menu or wine list.

35. The proceeds of the tip pool arrangement which go to the Maitre D' are not shared with the defendant Employers (*see* W2s submitted as Exhibit K).

36. In the restaurant business, a maitre d' customarily participates in a tip pool.

**E & D LLC Payroll Records**

28. Complete ADP payroll records and time records maintained in the ordinary course of business by E & D LLC for the three named plaintiffs have been provided to the plaintiffs and are available on CD by request. Excerpts for each named plaintiff are submitted herewith as Exhibit C (Menegis Aff. at para. 2).

37. Plaintiff Manfredi was employed by E & D LLC, as a waiter, from in or about February 2008 to April 2009. He only worked at The Prime Grill. Manfredi was never employed by JA Restaurant Management, LLC and he never worked at Solo Restaurant (Menegis Aff. at para. 3, Exhibit C).

38. Plaintiff Zarouri was employed by E & D LLC, as a waiter, from in or about January 2007 to December 2008. He only worked at The Prime Grill. Zarouri was never employed by JA Restaurant Management, LLC and he never worked at Solo Restaurant (Menegis Aff. at para. 3; Exhibit C).

39. Plaintiff Palaez was employed by E & D LLC, as a busboy and runner, from in or about October 2006 to September 2008. He only worked at The Prime Grill (Menegis Aff. at para. 4; Exhibit C)).

40. Palaez was never employed by JA Restaurant Management, LLC and he never worked at Solo Restaurant (Menegis Aff. at para. 5; Exhibit C).

41. Excerpts showing pay periods for Manfredi ending February 20, 2006 through March 27, 2009 are submitted herewith as part of Exhibit C. All payroll records reflecting overtime for Manfredi, are submitted herewith as Exhibit D (Menegis Aff. at para. 6).

42. Excerpts showing pay periods for Zarouri ending September 27, 2008 through November 29, 2008 are submitted herewith as part of Exhibit C. All payroll records reflecting overtime for Zarouri are submitted herewith as Exhibit E (Menegis Aff. at para. 7).

43. Excerpts showing pay periods for Palaez ending June 28, 2006 through September 6, 2006 are submitted herewith as part of Exhibit C. All payroll records reflecting overtime for Palaez are submitted herewith as Exhibit F (Menegis Aff. at para. 8).

44. Palaez is the only claimant who has worked at a privately catered party and he did so once on a volunteer basis. The record of his payment for that party by separate check, as per his request, is submitted herewith as Exhibit G (Menegis Aff. at para. 10).

45. The three named plaintiffs were only employed by E & D LLC at The Prime Grill. To date no employees of E & D LLC (The Prime Grill) have opted in this case (Menegis Aff. at para. 11).

46. The Prime Grill has maintained two methods of recording hours worked for its payroll, which is then processed by ADP. From its opening in 2000 through year-end 2004, a punch-card/time clock system was exclusively used. The time cards are signed by each employee. From January 2005 through the present, a hand-scan/time clock has also been in use. Some

employees such as plaintiff Manfredi and Zarouri continued to use the time clock (Menegis Aff. at para. 12).

47. For payroll purposes. Menegis deducts up to three (3) hours (usually 2 ½ hours) from the time generated by the time clock or hand scanner due to a half-hour meal break afforded the employees each work day (Menegis Aff. at para. 13; Traube Aff. at para 13).

48. The plaintiffs each receive tips and, accordingly, the tip credit is applied to calculate the minimum wage of $4.60 per hour (Menegis Aff. at para. 13).

49. All payroll records for each of the plaintiffs and opt-ins are filed as Exhibit C and included on the disk provided to the Court with courtesy copies. The payroll excerpts separately annexed as Exhibits D and E show the weeks in which overtime was worked for plaintiffs Manfredi and Zarouri respectively. Some of the punch cards do not photocopy or scan well due to light ink. When they are specifically referred to, the data is set forth herein from the original. The originals are available for inspection by counsel or the Court upon request.

50. The United States Department of Labor ("DOL") audited each of the defendants in 2008 for 2007-2008. Overtime shortages were found solely due to a defective ADP program that used an erroneous formula to calculate overtime. Overtime was supposed to have been calculated at 150% of the prevailing minimum wage. Although the Tip Credit was properly applied to the employees' straight time, the overtime was improperly calculated on the pay rate reduced by the Tip Credit (Menegis Aff. at para. 15).

**Manfredi**

51. The time records for week ending August 30, 2008 for plaintiff Manfredi show that he clocked-in forty hours of straight time @ $4.60 per hour for which he was paid $184 (Exhibit D). He received an additional $27.60 for 4 hours overtime at $6.90 per hour (erroneously

8

calculated at 1.5 x minimum wage after tip credit). Time and a half should have been applied to the full minimum wage of $7.15. This instance was apparently not picked up by the DOL audit. Consequently, to the extent he actually worked the overtime generated by time clocking practices, he would be owed the de minimus sum of $15.37 due to the defective ADP program and formula (Menegis Aff. at para. 16).

52. Manfredi also received $1,151.00 in tips for the week ending August 30, 2008 (Menegis Aff. at para. 17)

53. The time records for the pay period ending February 23, 2008 for plaintiff Manfredi show that he clocked-in forty hours of straight time @ $4.60 per hour for which he was paid $184 (Exhibit D). He received an additional $13.80 for 2 hours overtime at $6.90 per hour (erroneously calculated at 1.5 x minimum wage after tip credit). Time and a half should have been applied to the full minimum wage of $7.15. This instance was not picked up in the DOL audit. Consequently, to the extent he actually worked the overtime generated by his time clocking practices, he is owed the de minimus sum of $7.69 due to the defective ADP program (Menegis Aff. at para. 18).

54. The point–of-sale system (computerized cash register) recorded and accessed by the method of payment. To review all checks by a particular server for a certain date, the AMEX, Visa, Mastercard, Gift Card and cash sale records must be reviewed for each date. These records show that for the pay period ending February 23, 2008 (work weeks begin Saturday evening and ends Friday afternoon) (Menegis Aff. at para. 19).

55. Manfredi opened his first check and closed his last check of the day, as follows (Exhibit H; (Menegis Aff. at para. 20):

       Sat   2/16/08       ---------------------------       8:26-11:45 p.m.

|  |  |  |
|---|---|---|
| Sun 2/17/08 | -------------------------- | 5:52 - 9:53 p.m. |
| Mon 2/18/08 | -------------------------- | -------------------------- |
| Tues 2/19/08 | 12:29 – 2:57 p.m. | 5:33-10:58 p.m. |
| Wed 2/20/08 | -------------------------- | 6:08-11:08 p.m. |
| Thur 2/21/08 | 12:26 – 3:00 p.m. | 6:29-11:30 p.m. |
| Fri 2/22/08 | 12:24 – 2:48 p.m. | -------------------------- |

56. The sales records and punch cards used by Manfredi show that on 2/19/08 he worked the lunch and dinner shifts. He punched out at 3:30 p.m. and punched in again shortly thereafter at 3:46 p.m. As shown above, he closed his final lunch check 2:57 p.m. and opened his first dinner check at 5:33 p.m. (Menegis Aff. at para. 21).

**Zarouri**

57. The time records for week ending August 2, 2008 for plaintiff Zarouri show that he clocked-in forty hours of straight time @ $4.60 per hour for which he was paid $184 (Exhibit E). He received an additional $13.80 for 2 hours overtime at $6.90 per hour (erroneously calculated at 1.5 x minimum wage after tip credit). Time and a half should have been applied to the full minimum wage of $7.15. This instance was not picked up in the DOL audit. Consequently, to the extent he actually worked the overtime generated by his time clocking practices, he would be owed the de minimus sum of $7.69 due to the defective ADP program (Menegis Aff. at para. 22).

58. Zarouri also received $1,155.24 in tips for the week ending August 2, 2008 (Menegis Aff. at para. 23).

59. The time records for the pay period ending August 23, 2008 for plaintiff Zarouri show that he clocked-in forty hours of straight time @ $4.60 per hour for which he was paid $184 (Exhibit E). He received an additional $27.60 for 4 hours overtime at $6.90 per hour (erroneously calculated at 1.5 x minimum wage after tip credit). Time and a half should have been applied

to the full minimum wage of $7.15. This instance was not picked up in the DOL audit. Consequently, to the extent he actually worked the overtime generated by his time clocking practices, he would be owed the de minimus sum of $15.37 due to the defective ADP program (Menegis Aff. at para. 24).

60. The point–of-sale system (computerized cash register) shows that for the week ending August 2, 2008 (work weeks begin Saturday evening and ends Friday afternoon), Zarouri opened his first check and closed his last check, as follows (Exhibit I; Menegis Aff. at para. 25):

| | | |
|---|---|---|
| Sat 7/26/08 | -------------------------------------------------------- | |
| Sun 7/27/08 | --------------------------------------------------------. | |
| Mon 7/28/08 | -------------------- | 5:51 - 11:15 p.m. |
| Tues 7/29/08 | 12:45-2:49 p.m. | 5:21 - 12:14 a.m. |
| Wed 7/30/08 | --------------------------- | 5:31 - 10:46 p.m. |
| Thur 7/31/08 | --------------------------- | 5:30 - 12:14 a.m. |
| Fri 8/01/08 | ------------------------------------------------------ | |

61. The sales records and punch cards used by Zarouri show that on 7/29/08, he worked the lunch and dinner shifts. He never punched out after the lunch shift and after a break of 1 ½ to 2 hours he returned and punched out, then immediately punched in again for the dinner shift at 4:59 p.m. As shown above, he closed his final lunch check 2:49 p.m. and opened his first dinner check at 5:21 p.m. (Menegis Aff. at para. 21).

**Palaez**

62. Plaintiff Palaez was included in said DOL audit for the "period covered by work week[s] ending" 01/06/2007 to 08/30/2008. The resulting Summary of Unpaid Wages, included in pertinent part with Exhibit F, shows that the DOL has already remedied the overtime calculation errors totaling $126.61 on behalf of Palaez (Menegis Aff. at para. 26).

63. The three named plaintiffs received sufficient tips for E & D LLC to qualify for the tip credit (Exhibit C; Exhibit D; Exhibit E; Exhibit F).

**JA Restaurant Management LLC Payroll Records**

64. Complete and accurate ADP payroll records and time records for two opt-ins Hernandez and Plechavicius, who were employed by JA Restaurant Management LLC at Solo Restaurant, were provided to plaintiff's with the Initial Disclosures. Excerpts from the last four weeks of employment are submitted herewith as Exhibit C. Complete payroll and time records for Giresi, the third opt-in have also been provided to plaintiff's counsel.

65. The following three (3) former employees of JA Restaurant Management LLC, at Solo Restaurant, have opted-in to the claims made by the aforesaid employees of E & D LLC

    (a) Alaink Hernandez filed opt-in on November 2, 2009.
    (b) John Plechavicius filed opt-in on November 9, 2009.
    (c) Gregory Giresi filed opt-in on November 9, 2009.

66. Gregory Giresi was employed by JA Restaurant Management LLC at Solo Restaurant from October 25, 2006 to December 10, 2007. The payroll and time records for the week ending December 14, 2006, annexed as Exhibit J, show a single instance of overtime for which he was paid. Consequently, to the extent he actually worked the overtime generated by his time clocking practices, he may be owed a de minimus sum for his single occurrence due to the defective ADP program and formula

67. Alaink Hernandez was employed by JA Restaurant Management LLC at Solo Restaurant from December 10, 2005 to March 17, 2007. The payroll and time records for the week ending December 7, 2006, annexed as Exhibit K, show a single instance of overtime worked for which he was paid (Menegis Aff. at para. 30). Consequently, to the extent he actually worked the overtime generated by his time clocking practices, he may be owed a de minimus sum for this single occurrence due to the defective ADP program and formula

68. John Plechavicius was employed by JA Restaurant Management LLC at Solo Restaurant from August 21, 2004 to December 10, 2005. His payroll and time records show that he never worked overtime (Exhibit C) and he rarely worked 40 hours (Menegis Aff. at para. 31).

69. The three opt-ins received sufficient tips for JA Restaurant Management LLC to qualify for the tip credit (Exhibit C; Exhibit J; Exhibit K).

70. For payroll purposes, Menegis has deducted up to three (3) hours (usually 2 ½ hours) from the time generated by the time clock or hand scanner at each of defendants' restaurants due to a half-hour meal break afforded the employees each work day (Traube Affidavit at para. 26; Menegis Aff. at para. 33).

Dated: New York, New York
      January 26, 2010

                              LAW OFFICE OF THOMAS RUBERTONE JR.
                              *Attorney for the Defendants*

                              ***Thomas Rubertone Jr.***
                              Thomas Rubertone, Jr. (TR2193)